# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| TOP TOBACCO, L.P. and REPUBLIC TOBACCO, L.P., | ) ) ) ) | Case No. 16-cv-4292 (Consol. Case No. 14-cv-8978) |
| Plaintiffs/Counter-Defendants, | ) ) | Judge Robert M. Dow, Jr. |
| v. | ) ) | |
| GOOD TIMES USA, LLC, | ) ) | |
| Defendant/Counter-Plaintiff. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Top Tobacco, L.P. and Republic Tobacco, L.P. brought this trademark infringement action against Defendant Good Times USA, LLC. Before the Court is Plaintiffs' motion to strike affirmative defenses [13]. For the reasons set forth below, the Court grants in part and denies in part Plaintiffs' motion to strike [13] as follows: Plaintiffs' motion to strike is denied as to the first affirmative defense of laches; Plaintiffs' motion to strike is granted without prejudice as to the second, third, and fourth affirmative defenses of acquiescence, estoppel, and unclean hands. Defendant may file a motion for leave to replace the stricken affirmative defenses if it believes it can overcome the deficiencies identified below. A further status hearing is set on February 22, 2017 2017 at 9:30 a.m.

## I.   Background

Plaintiff Top Tobacco, L.P. distributes and sells a variety of smokers' articles and tobacco-related products. Plaintiff Republic Tobacco, L.P. is Top Tobacco's exclusive distributor. Plaintiffs own a number of trademarks related to their products, including the FOUR ACES mark for use with tobacco and the 4 ACES mark for use with cigarette tubes, which are at issue in these consolidated cases. Plaintiffs use these marks with an image depicting four ace

playing cards arranged in a four-of-a-kind playing-card hand. Defendant Good Times USA, LLC also produces, distributes, and sells tobacco and smokers' articles, including cigarillos.

Plaintiffs first filed suit against Defendant in 2014,[1] alleging that Defendant's use of a 4 KINGS mark in connection with its 4 KINGS cigarillos—depicting four king playing cards arranged in a four-of-a-kind playing card hand—is an unauthorized misappropriation of Plaintiffs' FOUR ACES mark in violation of various trademark-infringement and unfair-competition laws. On December 22, 2014, Defendant answered the complaint, raising seven affirmative defenses and alleging five counterclaims against Plaintiffs. [14-cv-8978, 20.] Plaintiffs moved to strike all seven affirmative defenses and Counterclaim #1. [14-cv-8978, 24.] The Court granted in part and denied in part Plaintiffs' motion to strike. [14-cv-8978, 32.] The Court explained that it would permit Defendant to proceed with Counterclaim #1 only to the extent that Defendant seeks declarations that (1) Plaintiffs' GAMBLER, FOUR ACES, and HIGH CARD marks do not create "a family of related playing card marks," and (2) Defendant's use of its 4 KINGS mark does not create a likelihood of confusion, mistake, or deception with Plaintiffs' "family of marks" (collectively, the "family-of-marks claims"). Additionally, the Court granted without prejudice Plaintiffs' motion to strike affirmative defenses #1–5 (laches, waiver, estoppel, acquiescence, and unclean hands) and granted with prejudice Plaintiffs' motion to strike affirmative defenses #6–7 (not actual affirmative defenses).

On April 13, 2016, Plaintiffs filed a second lawsuit[2] against Defendant, alleging that Defendant's use of a 4 K's mark, which Defendant started using instead of 4 KINGS—while maintaining the same depiction of the four king playing cards—is also an unauthorized misappropriation of Plaintiffs' FOUR ACES mark in violation of various trademark-

---

[1] Case No. 14-cv-8978.
[2] Case No. 16-cv-4292.

infringement and unfair-competition laws. [1.] On May 9, 2016, the Court granted the parties' agreed motion to consolidate the two cases. [14-cv-8978, 53; 16-cv-4292, 12.] Defendant filed an answer on May 16, 2016, raising the four affirmative defenses currently at issue: laches, equitable estoppel, acquiescence, and unclean hands. [14-cv-8978, 54.] Currently before the Court is Plaintiffs' motion to strike all four affirmative defenses. [13.]

## II.    Legal Standard

Under Federal Rule of Civil Procedure 12(f) "the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored but may be used to expedite a case by "remov[ing] unnecessary clutter." *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989); see also *NewNet Commc'n Techs., LLC v. VI E-Cell Tropical Telecom, Ltd.*, 2015 WL 1520375, at *3 (N.D. Ill. Mar. 30, 2015) ("But where a defendant's asserted [affirmative defenses] are both legion and mostly frivolous, a motion to strike can aid the parties in resolving the case by removing irrelevant issues from consideration").

Affirmative defenses are pleadings and, as such, remain subject to the pleading requirements of the Federal Rules of Civil Procedure. *Heller*, 883 F.2d at 1294; *Shield Techs. Corp. v. Paradigm Positioning, LLC*, 2012 WL 4120440, at *10 (N.D. Ill. Sept. 19, 2012) (noting that affirmative defenses must be adequately pled under Rules 8 and 9 and must withstand a Rule 12(b)(6) challenge). Most courts in this district have applied the "plausibility" pleading standard in *Twombly* and *Iqbal* to affirmative defenses. See *Lincoln Gen. Ins. Co. v. Joseph T. Ryerson & Son, Inc.*, 2015 WL 3819215, at *2 (N.D. Ill. June 18, 2015); *Naylor v. Streamwood Behavioral Health Sys.*, 2012 WL 5499441, at *7 (N.D. Ill. Nov. 13, 2012) (collecting cases). Thus, an affirmative defense must comply with Rule 8(a) by providing "a

short and plain statement" of the nature of the defense. *Bobbitt v. Victorian House, Inc.*, 532 F. Supp. 734, 737 (N.D. Ill. 1982) (citing Fed. R. Civ. P. 8(a)). This is meant to give the plaintiff "fair notice" of what the affirmative defense is and the "grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements * * * will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "Ordinarily, [affirmative] defenses will not be struck if they are sufficient as a matter of law or if they present questions of law or fact." *Heller*, 883 F.2d at 1294.

### III. Analysis

#### A. Laches

In raising its first affirmative defenses, Defendant asserts that Plaintiffs' claims are barred by the doctrine of laches because "[u]pon information and belief, Plaintiffs knew and were aware of [Defendant's] use of the 4 K's mark * * * long prior to filing [the complaint in the second lawsuit] and to the deadline to amend the pleadings [in the first lawsuit]." [14-cv-8978, 54, at 15.] In moving to strike, Plaintiffs argue that this affirmative defense is insufficient as a matter of law because Defendant cannot show that Plaintiffs unreasonably delayed in bringing their claims or that Defendant was prejudiced.

The doctrine of laches is derived from the maxim that those who sleep on their rights lose them. *Chattanoga Mfg., Inc. v. Nike, Inc.*, 301 F.3d 789, 792 (7th Cir. 2002). For laches to apply, the defendant must show that (1) the plaintiff had knowledge of the defendant's use of an allegedly infringing mark, (2) the plaintiff inexcusably delayed in taking action with respect to the defendant's use, and (3) the defendant would be prejudiced by allowing the plaintiff to assert its rights at this time. *Id.* at 792–93. Actual or constructive notice of the defendant's activities

will satisfy the first part of the inquiry. *Id.* at 793. Further, a trademark owner is "chargeable with information it might have received had due inquiry been made." *Id.* (quoting *Safeway Stores, Inc. v. Safeway Quality Foods, Inc.*, 433 F.2d 99, 103 (7th Cir. 1970)) (internal quotation marks omitted).

Plaintiffs contend that Defendant first disclosed that it had adopted and began using the 4 K's mark for cigarillos on December 10, 2015, about four months before the second lawsuit was filed on April 13, 2016. [14, at 5.] Plaintiffs argue that "[a]t most, [Plaintiffs] waited less than six months from the time the Defendant's use was disclosed to file [their] claim of infringement." [*Id.*] Plaintiffs contend that as a matter of law, a few months of delay is not sufficient to constitute laches. Defendant alleges that Plaintiffs have actually been aware of Defendant's use of the 4 K's mark since at least September 14, 2015—seven months prior to the filing of the second lawsuit—and further allege that "it is likely that Plaintiffs' [sic] knew of [Defendant's] use of the 4 K's mark since well prior to September 14" given that the parties were already involved in litigation relating to Defendant's use of the 4 KINGS mark. [19 (Defendant's Response Brief), at 2.]

Plaintiffs' argument that Defendant cannot show unreasonable delay or prejudice relates to the merits of the affirmative defense (*e.g.*, how long Plaintiffs delayed in bringing this action and whether Plaintiffs' delay was unreasonable), not the sufficiency of the pleadings. Courts generally construe such motions as premature. See, *e.g.*, *Seabolt v. Champagne*, 2006 WL 3192511, at *5 (E.D. Wis. Nov. 2, 2006) (denying a motion to strike and explaining that "Plaintiff's arguments invite the court to resolve the merits of the affirmative defense which is premature at this time"); *Cohn v. Taco Bell Corp.*, 1995 WL 493453, at *2 (N.D. Ill. Aug. 16, 1995) (noting that "speculation that Defendant may not be able to prove [the affirmative defense]

5

does not require the Court to strike Defendant's [affirmative defense] for failure to meet the requirements of Rule 8(a)"). The Court concludes that Plaintiffs' merits argument is premature and that Defendant has sufficiently provided a short and plain statement of the nature of the defense under Rule 8(a). See *Heller*, 883 F.2d at 1294 ("Ordinarily, [affirmative] defenses will not be struck if they are sufficient as a matter of law or if they present questions of law or fact."); *Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1400 (7th Cir. 1991) (noting that motions to strike "will not be granted unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense"). Thus, Plaintiffs' motion to strike the affirmative defense of laches is denied.

### B. Acquiescence

The second affirmative defense at issue is the doctrine of acquiescence. In raising this affirmative defense, Defendant states: "Through its [sic] actions, Plaintiffs have actively misled [Defendant] into believing that Plaintiffs consented to and would not assert rights against [Defendant's] use of the 4 K's mark. [Defendant] has reasonably relied on Plaintiffs' actions and prejudice has resulted to [Defendant] as a result of such reliance." [14-cv-8978, 54, at 16.] Plaintiffs argue that the Court should strike this affirmative defense because Defendant fails to provide facts supporting its allegation that "Plaintiffs have actively misled [Defendant]."

Acquiescence is an equitable doctrine that permits a court to deny relief in a trademark infringement action if the owner of the mark has, through his affirmative words or conduct, conveyed his consent to the defendant's use of the mark. See *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 940 (7th Cir. 2016); *TMT N. Am., Inc. v. Magic Touch GmbH*, 124 F.3d 876, 885 (7th Cir. 1997). This affirmative defense "prevents the trademark owner from impliedly permitting another's use of his mark and then attempting to enjoy that use *after* the junior user

has invested substantial resources to develop the mark's goodwill." *Id.* In contrast to laches, which involves a "negligent, unintentional failure to protect trademark rights," acquiescence involves "active consent." *Id.* Acquiescence requires "*intentional* abandonment" through an "affirmative word or deed." *Id.* (citations and internal quotation marks omitted).

The Court agrees that this affirmative defense, as pled, is nothing more than a "formulaic recitation of the elements" of acquiescence. See *Iqbal*, 556 U.S. at 678. As stated above, this Court agrees with the majority of courts in this district that the *Twombly* and *Iqbal* pleading standard applies to the pleading of affirmative defenses. See, *e.g.*, *Shield Techs. Corp.*, 2012 WL 4120440, at *7. Because affirmative defenses serve as a platform for discovery, which could be very costly, it is important that plaintiffs are given fair notice of the basis for each defense to allow them to litigate the defenses as they would any other issue. Here, Defendant has not provided any of the minimal specifics required by Rule 8 to give Plaintiffs fair notice of what alleged affirmative words or conduct actively misled Defendant to believe that Plaintiffs consented to Defendant's use of the 4 K's mark. Defendant argues in its response brief that Plaintiffs failed to timely object to Defendant's use of the 4 K's mark and that Plaintiffs had an "affirmative obligation" to amend their complaint in the first lawsuit and failed to do so. [19, at 9.] However, Defendant fails to cite any case law supporting its argument that Plaintiffs had an affirmative obligation to amend their complaint in the first lawsuit rather than file the second lawsuit based on the second infringing mark. Thus, the Court grants Plaintiff's motion to strike the affirmative defense of acquiescence. See *Isringhausen Imp., Inc. v. Nissan N. Am., Inc.*, 2011 WL 6029733, at *1 (C.D. Ill. Dec. 5, 2011) (striking affirmative defense of acquiescence where the defendant failed to "sufficiently allege active consent or an affirmative word or deed conveying consent").

## C. Equitable Estoppel

Defendant's affirmative defense of equitable estoppel fails for the same reasons as acquiescence. Defendant vaguely asserts that "[t]hrough its [sic] actions, Plaintiffs have actively misled [Defendant] into believing that Plaintiffs consented to and would not assert rights against [Defendant's] use of the 4 K's mark. [Defendant] has reasonably relied on Plaintiffs' action. Said actions by Plaintiffs and [Defendant's] reasonable reliance thereon has [sic] resulted in prejudice to [Defendant]." [14-cv-8978, 54, at 16–17.]

To properly assert equitable estoppel, the defendant must plead three elements: (1) plaintiff acted, (2) defendant reasonably relied on those acts, and (3) defendant thereby changed its position for the worse. *Codest Eng'g v. Hyatt Int'l Corp.*, 954 F. Supp. 1224, 1231 (N.D. Ill. 1996). Estoppel will only apply if the plaintiff was aware of the infringing conduct but nonetheless took some action designed to encourage or mislead the defendant. *Ty, Inc. v. W. Highland Pub., Inc.*, 1998 WL 698922, at *11 (N.D. Ill. Oct. 5, 1998) (citation and internal quotation marks omitted). Silence or inaction may constitute misleading conduct, but only when it is combined with "other facts respecting the relationship or communication between the parties to give rise to a necessary inference" that the plaintiff would not enforce its rights. *R2 Med. Sys., Inc. v. Katecho, Inc.*, 931 F. Supp. 1397, 1416 (N.D. Ill. 1996) (citation and internal quotation marks omitted). "Reliance requires more than a showing of economic harm. The evidence must show that the defendant had a relationship or communication with the [plaintiff] which would have reasonably lulled the [defendant] into a sense of security in investing in the infringing [trademark]." *Id.*

The Court concludes that Defendant has not alleged a specific act by Plaintiffs on which Defendant reasonably relied. Although Defendant alleges that it relied on Plaintiffs' silence after

Defendant began using the 4 K's mark, silence alone is not enough to constitute misleading conduct, and Defendant has not alleged a "relationship or communication between the parties giving rise to a necessary inference" that Plaintiffs would not enforce their rights. *R2 Med.*, 931 F. Supp. at 1416. Further, Defendant's reliance on Plaintiffs' silence was not reasonable, as Plaintiffs did nothing to indicate that they intended to authorize Defendant's use of the mark. See *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229 (7th Cir. 1991) (holding that estoppel was inapplicable where "[a]lthough [plaintiff] may not have sued [defendant] immediately after the policy change [giving rise to the copyright action at issue], it certainly undertook no action that [defendant] reasonably could have misconstrued"). Thus, the Court grants Plaintiff's motion to strike the affirmative defense of equitable estoppel. See *Zip Dee, Inc. v. Dometic Corp.*, 886 F. Supp. 1427, 1443 (N.D. Ill. 1995) (holding that equitable estoppel did not apply where "[Plaintiff] did not misrepresent or conceal any material fact, but rather chose a certain litigation strategy (which was ultimately successful) to combat a specific product").

### D. Unclean Hands

Finally, Defendant alleges that Plaintiffs' claims are barred by the doctrine of unclean hands because "Plaintiffs knowingly and willfully made material and false misrepresentations with the intent to deceive the U.S. Patent and Trademark Office ('USPTO') in a concerted effort to strengthen its purported rights in the marks FOUR ACES and four-of-a-kind hand comprising a high value playing card." [14-cv-8978, 54, at 17.] Specifically, Defendant alleges, upon information and belief, that Plaintiff Republic Tobacco assigned the rights in the trademark GAMBLER to Plaintiff Top Tobacco and misrepresented the effective date of the assignment. [*Id.* at 17–18.] Defendant further alleges that the purported effective date of the assignment is the same effective date of the assignment relating to the FOUR ACES mark. [*Id.* at 17.]

9

Plaintiffs argue that the Court should strike this affirmative defense because Defendant's allegations of unclean hands center on Plaintiffs' mark GAMBLER, which is unrelated to the current lawsuit.

Although the doctrine of unclean hands is not enumerated in Rule 8(c), which provides a non-exhaustive list of affirmative defenses, it is a properly designated and often raised affirmative defense. *Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc.*, 2003 WL 1720073, at *5 (N.D. Ill. Mar. 31, 2003). "The defense of unclean hands is shown by misconduct by the plaintiff involving the transaction complained of, which amounts to fraud, misconduct or bad faith toward the defendant making the contention." *Energetec Sys., Inc. v. Kayser,* 1986 WL 8058, at *2 (N.D. Ill. July 17, 1986). Unclean hands is only an appropriate affirmative defense where the alleged misconduct directly relates to the current lawsuit. "Where, on the other hand, the unclean hands are only collaterally related to the trademark that is the subject of the lawsuit, the defense does not operate to bar suit for infringement." *R.J. Reynolds Tobacco Co. v. Premium Tobacco Stores, Inc.*, 2001 WL 747422, at *2 (N.D. Ill. June 29, 2001) (citing *Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.*, 324 U.S. 806, 814–15, 65 S.Ct. 993 (1945); *McDonalds v. Hardee's Food Systems, Inc.*, 195 U.S.P.Q. 63, 64 (N.D. Ill.1976)).

Here, Defendant's allegations relate to Plaintiffs' allegedly unclean hands in obtaining rights to the GAMBLER mark. However, the GAMBLER mark is not at issue in this lawsuit. Defendant argues that Plaintiffs rely on the "fruits of their misrepresentations" related to the GAMBLER mark to "bully would-be competitors away from marks that are purportedly similar to its [sic] fabricated 'family of marks' and its FOUR ACES mark." [19, at 12.] The Court is not persuaded by Defendant's attempts to connect its allegations of unclean hands to the marks at

issue in the current litigation, especially since Defendant does not allege any specific facts relating to how Plaintiffs' rights in the GAMBLER mark strengthen their rights in the FOUR ACES mark or how and when Plaintiffs have "bull[ied] would-be competitors." See *Universal Mfg. Co. v. Douglas Press, Inc.*, 770 F. Supp. 434, 436 (N.D. Ill. 1991) ("The maxim of unclean hands is not applied where plaintiff's misconduct is not directly related to the merits of the controversy between the parties, but only where the wrongful acts in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication." (citation and internal quotation marks omitted)). Nor is Defendant's allegation that the GAMBLER and FOUR ACES marks have the same purported effective dates of assignments sufficient to show that any misconduct with regard to the GAMBLER mark is related to this suit. Thus, the Court grants Plaintiff's motion to strike the affirmative defense of unclean hands. See *Safe Bed Techs. Co. v. KCI USA, Inc.*, 2003 WL 21183948, at *6 (N.D. Ill. May 20, 2003) (striking unclean hands affirmative defense where activities alleged in defendant's unclean hands defense were not directed at defendant nor directly related to the currently lawsuit).

## IV. Conclusion

For the reasons set forth above, Plaintiffs' motion to strike [13] is granted in part and denied in part: Plaintiffs' motion to strike is denied as to the first affirmative defense of laches; Plaintiffs' motion to strike is granted without prejudice as to the second, third, and fourth affirmative defenses of acquiescence, estoppel, and unclean hands. Defendant may file a motion for leave to replace the stricken affirmative defenses if it believes it can overcome the deficiencies identified above. A further status hearing is set on February 22, 2017 2017 at 9:30 a.m.

Dated: January 30, 2017

Robert M. Dow, Jr.
United States District Judge